THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE LRCiv P 7.1 (a)(1)
(Rule Number/Section)

```
          ┌─────────────────────────────────┐
          │  ✓ FILED        ___ LODGED       │
          │ ___ RECEIVED    ___ COPY         │
          │                                  │
          │        MAR 1 0 2017              │
          │                                  │
          │  CLERK U S DISTRICT COURT        │
          │    DISTRICT OF ARIZONA           │
          │  BY                  DEPUTY      │
          └─────────────────────────────────┘
```

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

**ANDREW ACOSTA,**
    Petitioner,

    v.

**UNITED STATES OF AMERICA,**
    Respondent.

D.C. Case No: CR-05-1319-PHX-MHM

Civil Case No. _____

## MOTION PURSUANT TO

## 28 U.S.C. § 2255

Before this Honorable Court, Petitioner, Andrew Acosta, comes as a pro se inmate litigant. With that in mind, Petitioner requests that this motion be liberally construed pursuant to the United States Supreme Court's ruling in <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521 (1972).

### JURISDICTION

A United States District Court is established under the mandate of Article 3 Section 1, of the Constitution. "[P]roviding that the District Court should have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction...saving to suitors, in all cases the the right of common-law remedy, where the common law is competent to give." <u>Charles Nelson Co. v. Curtis</u>, 1 F.2 774 (9th Cir. 1924). As such, this District Court has jurisdiction to review the merits of this petition from Article 1.

Section 9, Clause of the constitution to the United States Of America. See Johnson v. Avery, 393 U.S. 483 (1969)("This Court has constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme, and the Congress has demonstrated its solicitude for the vigor of the Great Writ. The Court has steadfastly insisted that 'there is no higher duty than to maintain it unimpaired'") See also Bowen v. Johnson, 306 U.S. 19, 26 (1939)

## BACKGROUND

Following a jury trial, Andrew Acosta, henceforth Petitioner, was convicted of two counts of Bank Robbery in violation of 18 U.S.C. §2113(a)(2) under the above mentioned case. At the time, Petitioner was serving a 210 month sentence for Bank Robbery, Case No: D.C. 03-00075-PHX-EHC. The robberies, as admitted by the U.S. Attorney's Office at sentencing, were committed before the Bank Robberies that Petitioner was serving his sentence on, and, the investigators knew, at the time of the first trial, that all robberies were connected. (see Exhibit A, Sentencing transcripts of June 18, 2008 Pages 1-8) Taking this into consideration, the Court sentenced Petitioner to 210 months on Count two to be ran concurrent with the previous 210 months he was sentenced to on Case No: D.C. 03-00075-PHX-EHC and 96 months on Count One to run consecutive.

In August of 2016, Petitioner filed a pro se brief citing Johnson v United States, 135 S. Ct. 2551(2015) and was subsequently given an attorney.

## ARGUMENT

There has been some confusion on Case No: 03-00075-PHX-EHC, and the case at hand. Petitioner was under the impression that his motion in August of 2016 would cover both cases. He was advised that he would need to seek permission to file from the Ninth Circuit Court of Appeals. This was not true.(See Exhibit B, Order by the Ninth Circuit Court of Appeals.)

Sandra K. Hamilton is Petitioner's attorney of record on case number

D.C. 03-00075-PHX-EHC and has been given permission from the Ninth Circuit to file a second and successive petition on said case. These two cases should be combined because of the time-line of the robberies, and the Court's findings.

Petitioner was deemed a career offender using two prior convictions: One being Case No: CR98-00894-002-PHX-RGS Extortion, an Incidental Offense to Bank Robbery. And Two, Case No: CR92-90323, Conspiracy to Sell Narcotic Drugs. Sandra K. Hamilton has filed a 28 U.S.C. §2255 that pertained to Petitioner's prior Bank Robbery and his career offender status that stemmed from those convictions. These same two convictions were used to enhance Petitioner to career offender status on the current case number. Now, and in conjunction with the §2255 filed by Ms. Hamilton on Case No: D.C. 03-00075-PHX-EHC, Petitioner files this §2255 arguing the Supreme Court's ruling in United States v. Mathis 136 S. Ct 2243 (2016) and the unpublished case ruled on in the Ninth Circuit United States v. Sanchez-Fernandez, U.S. App. Lexis 17618 (9th Cir. 2016). The combined rulings of these two cases, along with Ms. Himilton's argument, and the fact that the two sentences were ran concurrent because of the timeline, Petitioner is no longer a career offender. This is Petitioner's first §2255 on this case number,

In Mathis, the Supreme Court distinguished between statutes "that list multiple elements disjunctively" and those that "enumerate various factual means of committing a single element" Mathis 136 S. Ct at 2249. This line of reasoning in Mathis by the Supreme Court was the basis for the Ninth Circuit's ruling in Sanchez-Fernandez that over turned the use of Arizona's revised Statute 13-3408(A)(2) as a predicate to a career offender enhancement. Both sentences given to Petitioner, the case at hand, and Case No: 03-00075-PHX-EHC, applied the Arizona drug conviction for the purpose of enhancing Petitioner to career offender status.

Petitioner has shown due diligence in his pursuit of having his sentence

corrected. When Petitioner was sentenced, neither the District Court nor the parties had the benefit of <u>Mathis</u>. Because a jury would not be required to find which narcotic drug the defendant possessed to render a conviction for §13-3408(A)(2) the statute is indivisible. See <u>Mathis</u> at 2256-57. Petitioner's attorney argued this issue on direct appeal but was struck down. This is Petitioner's one and only §2255 on this case and is part and parcel of his appellate rights.

Petitioner believe's that both petitions in the District Court should be combined, and that the argument involving <u>Mathis</u> and <u>Sanchez-Fernandez</u> apply to both §2255's.

Respectfully Submitted by,

Andrew Acosta

Dated This 7th Day of March 2017

**EXHIBIT A**

1               UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF ARIZONA

3               _____

4
    UNITED STATES OF AMERICA,        )
5                                     )
                                      )
6                       Plaintiff,    )
                                      )
7               vs.                   )   NO. CR 05-1319 PHX-MHM
                                      )
8    ANDREW ACOSTA,                   )   Phoenix, Arizona
                                      )   June 18, 2008
9                                     )   2:25 p.m.
                        Defendant.    )
10   _____ )

11              REPORTER'S TRANSCRIPT OF PROCEEDINGS

12                        (Sentencing)

13          BEFORE THE HONORABLE MARY H. MURGUIA

14

15   APPEARANCES:

16   For the Plaintiff:      **Charles F. Hyder**, Esq.
                             Assistant U.S. Attorney
17                           Two Renaissance Square
                             40 N. Central Avenue, Suite 1200
18                           Phoenix, Arizona  85004-4408

19   For the Defendant:      **Philip E. Hantel**, Esq.
                             710 W. Roosevelt
20                           Phoenix, Arizona 85007-0001

21   Court Reporter:         Merilyn A. Sanchez, CRR
                             Sandra Day O'Connor U.S. Courthouse
22                           401 W. Washington Street SPC-37
                             Phoenix, Arizona  85003-2118
23                           (602) 322-7250

24   Proceedings taken by stenographic court reporter
     Transcript prepared by computer-aided transcription
25

2

1                    P R O C E E D I N G S

2

3            THE COURTROOM DEPUTY CLERK:   Criminal case 05-1319,

4    United States of America versus Andrew Acosta, on for

5    sentencing.                                                    14:25:05

6            MR. HYDER:   Good afternoon, Your Honor, Charles Hyder

7    on behalf of the United States.

8            MR. HANTEL:   Good afternoon, Judge, Phil Hantel on

9    behalf of Mr. Acosta, who is present and before the bar.

10           THE COURT:   Good afternoon.   Before we proceed with     14:25:15

11   sentencing, Mr. Hyder, if you could come forward.   And I just

12   want to see if you can sufficiently explain, or if you need

13   your investigator here, what the delay was in bringing these

14   charges against Mr. Acosta and why they were brought

15   approximately around the same time as the -- as the Indictment   14:25:42

16   that resulted in the 2003 conviction in the case before Judge

17   Carroll.

18           MR. HYDER:   Well, Your Honor, if you recall,

19   Agent Sanborn testified with regard to the chronological events

20   that occurred in this case.   The December 2003 conviction arose  14:26:02

21   out of the bank robbery at the Bank of America on 16th Street

22   in Phoenix, and Mr. Acosta was identified in that robbery

23   through a tip that was given to the police after his picture in

24   the surveillance films were broadcast on TV.

25           Once the tip was received and he was identified, the      14:26:37

3

1    lineups were prepared.  And in the investigation of that case,

2    he was identified on those lineups.

3             THE COURT:  And this --

4             MR. HYDER:  The Indictment in this case was filed,

5    because there was no knowledge at that time that Mr. Acosta had     14:26:55

6    committed the two robberies that you tried.

7             THE COURT:  There's a difference of four months in the

8    robberies -- well, August to December.

9             MR. HYDER:  Yes.

10            THE COURT:  Okay.  And so the tip was received, the        14:27:09

11   lineups were prepared, and he was identified.  And so an

12   Indictment came forward for the bank robberies that occurred in

13   December of '03?

14            MR. HYDER:  '03, I believe it was, or '02.  It was the

15   same year as this but it was in December.  He wasn't arrested     14:27:30

16   until January of '03.

17            THE COURT:  Right.  So it would have been December of

18   '02.

19            MR. HYDER:  That's right.

20            THE COURT:  Okay.                                          14:27:38

21            MR. HYDER:  So at the time that that happened, there

22   was no awareness that he had committed these two bank robberies

23   that you had.  So that case was proceeding.  The Indictment was

24   issued.  The investigation continued.  And Agent Sanborn then

25   took the lineups to Inam Dahdal, who was the teller in the         14:27:55

4

1   December bank robbery.  And she identified Mr. Acosta.  And

2   then at a later time, he tracked down -- I think her name

3   was --

4                THE COURT REPORTER:  I didn't hear that, Your Honor.

5                THE COURT:  Can you repeat the name?                    14:28:17

6                MR. HYDER:  Yes, Destiny Cammorata, I believe is her

7   name.  I'm doing this out of memory.  And she also identified

8   Mr. Acosta as the person she saw running out of the bank.

9                THE COURT:  Which bank?

10               MR. HYDER:  For the December 2002 bank.               14:28:31

11               THE COURT:  Okay, go ahead.

12               MR. HYDER:  So that case was proceeded with and we

13  were preparing for trial on that matter.  And in going back

14  over the materials, Agent Sanborn then discovered that in

15  looking at surveillance pictures of other bank robberies,     14:28:52

16  because I think he testified, if you recall, that the FBI keeps

17  surveillance pictures from all unsolved robberies, even the

18  solved robberies.  And he happened to notice that in these

19  robberies that we are talking about here, Mr. Acosta, the

20  robbers, one of the robbers looked like Mr. Acosta.           14:29:17

21               So he took -- he started looking at that time for

22  Kimberly Kitchens, who later became Kimberly Corrosco.

23               THE COURT:  What time would that have been?

24               MR. HYDER:  Well, that was just prior to the trial in

25  Judge Carroll's court.                                         14:29:36

5

```
1              THE COURT:   And so just one moment.  So that trial

2   occurred in September of '03.

3              MR. HYDER:   Yeah.

4              THE COURT:   So just prior to that trial.

5              MR. HYDER:   Prior to that trial, if my recollection       14:29:55

6   serves me correctly, he was looking for Kimberly Corrosco,

7   Kimberly Kitchens at that time.  And he didn't find her until

8   April, I think it was April 10th, 2004, when she made that

9   identification.

10             In the meantime, during the trial in front of Judge        14:30:19

11  Carroll, we informed or I informed Mr. Acosta's attorney,

12  Daphne Budge, that we had believed that we had Mr. Acosta as a

13  suspect in another robbery.  And that if we could make that

14  case, we were going to be filing it or filing.

15             Prior to the trial in Judge Carroll's court, Ms. Budge     14:30:50

16  asked me to talk to Mr. Acosta about giving him a plea offer.

17  So with Ms. Budge present in the courtroom, Judge Carroll -- in

18  Judge Carroll's courtroom, I called or had Agent Sanborn call

19  Mori Emmons.  Mori Emmons had, in the meantime, made an

20  identification of Mr. Acosta as the robber in that case.  And     14:31:18

21  later -- and originally before we found Kimberly Kitchens,

22  Mr. Mike Riley, who was Mr. Acosta's boss in December of 2003,

23  was shown the picture of Mr. Acosta in that other bank robbery.

24  He identified him as the robber.

25             So at that time we felt we had a pretty good case.  We    14:31:41
```

6

1   hadn't filed anything on it yet because we were getting ready

2   to go to trial on this one.  She asked to talk to Mr. Acosta in

3   her presence.  We talked to Mr. Acosta and I informed him that

4   we felt -- in fact, we gave her the surveillance pictures of

5   that robbery.  We gave her the reports of that robbery.  And          14:32:01

6   she showed those to Mr. Acosta.

7           Mr. Acosta refused to take the plea agreement.  We

8   told him that if he didn't take that, that if we found the

9   witness that could identify him in the bank, and we were pretty

10  sure we were going to, those cases would probably be filed.           14:32:26

11  He -- so that case wasn't filed until Kimberly Kitchens was

12  tracked down, shown the lineup, and she identified Mr. Acosta.

13  By that time, he had been convicted and we filed these charges.

14          The fact of the matter is, Your Honor, now that you

15  bring that up, may I approach?                                        14:33:05

16          THE COURT:  Yes.

17          MR. HYDER:  Mr. Hantel, in his sentencing memorandum,

18  mentioned an argument with regard to the underlying offense in

19  this case.  And that it was alleged in his 2255, Ms. Ruffennach

20  in that case in our office has filed a response in opposition        14:33:31

21  to that motion, which contains the argument with regard to

22  that.  But on page 12, and I would like to offer this to the

23  Court for its perusal, it's a copy of her response.  This does

24  show that that discussion with Mr. Acosta took place in court

25  with Mori Emmons, Agent Sanborn, and myself with Mr. Acosta and      14:33:59

1    Ms. Budge, so --

2         THE COURT:   But, so it took you over two years,

3    though, to bring this Indictment in this case after his --

4         MR. HYDER:   Well, that's true, because Agent Sanborn

5    in the interim had been transferred and the cases that he had          14:34:17

6    had been transferred to other attorneys.   I think Daniel

7    Noriega then took over for that case.   Daniel Noriega got

8    transferred.   And then another agent took that case from Daniel

9    Noriega, and I believe he got transferred.   So in the last

10   analysis, Heather Bergey then got the case.   She didn't know          14:34:37

11   much about the case.   And I brought Agent -- I don't remember

12   whether it was Agent Sanborn or Agent Richard who came before

13   the grand jury to testify.   I believe it was Agent Sanborn.

14        THE COURT:   I think we found out it was Agent Sanborn.

15        MR. HYDER:   Yes, it was Agent Sanborn, that's right.          14:34:57

16   So that's how that time limit got involved, not to mention the

17   fact that I was trying other cases in the interim.

18        THE COURT:   Okay.   But, I guess you agree that based

19   on the discussion, it was -- would have been possible to

20   resolve all of these cases possibly at one time through a plea          14:35:21

21   agreement, but the defendant refused?

22        MR. HYDER:   No, I don't -- pardon me, what was the

23   last sentence?

24        THE COURT:   But the defendant refused.

25        MR. HYDER:   Well, I don't know that it would have been          14:35:33

8

1    possible, because we hadn't perfected what I thought was

2    sufficient enough to file at that time.  But I told him that,

3    yes, if he would plead at that time, that we wouldn't file that

4    case, we wouldn't continue to investigate it.  We would drop

5    that.  We would drop also the narcotics case that we had        14:35:51

6    against him because he was found with cocaine in prison.  So he

7    had an opportunity.

8            THE COURT:  So the answer to my question is yes?

9            MR. HYDER:  Yes.  We could have -- if he would have

10   accepted it, we could have resolved it.                         14:36:06

11           THE COURT:  Okay.  All right.  Thank you very much.

12           MR. HYDER:  May I approach to have you -- part of the

13   argument with regard to Mr. Hantel's argument in his sentencing

14   memorandum with regard to the -- whether or not the drug

15   trafficking can be counted as far as calculating Mr. Acosta's   14:36:27

16   career criminal status, that argument is answered in this

17   motion by Ms. Ruffennach in response to the 2255 that

18   Mr. Hantel mentioned in his sentencing memorandum.

19           THE COURT:  And it's responding in what way?

20           MR. HYDER:  Well, it's the Government's answer in       14:36:48

21   opposition to his motion to vacate and set aside the sentence.

22           THE COURT:  But what does it -- can you summarize here

23   for the record what it says, or the point you are trying to

24   make?

25           MR. HYDER:  Yes.  And that point, before Mr. Seplow --  14:37:00

**EXHIBIT B**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 17 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANDREW ACOSTA, | No.   17-70319 |
| Applicant, | D.C. No. 2:05-cr-01319-RCC-1 |
| | District of Arizona, |
| v. | Phoenix |
| UNITED STATES OF AMERICA, | ORDER |
| Respondent. | |

Before:      GOODWIN, FARRIS, and FERNANDEZ, Circuit Judges.

The application for authorization to file a second or successive 28 U.S.C.
§ 2255 motion in the district court is denied as unnecessary because the record
suggests that the applicant has not filed a prior section 2255 motion challenging his
conviction in the District Court for the District of Arizona, case number 2:05-cr-
01319-RCC-1.

If the applicant files a section 2255 motion in the district court challenging
this conviction, the applicant shall provide the district court with a copy of this
order.

We express no opinion as to the merits of the applicant's claims or whether
the procedural requirements of 28 U.S.C. § 2255(f) are satisfied.

The applicant's motion to consolidate this case with case number 16-72717
is denied.

No further filings will be entertained in this case.