PAUL ANTHONY MARTIN
Acting United States Attorney
District of Arizona

KARLA HOTIS DELORD
Assistant U.S. Attorney
Arizona State Bar No. 019134
Email: Karla.Delord@usdoj.gov
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, Plaintiff, v. Andrew Acosta, Defendant. | No. CR-05-01319-PHX-RCC<br>**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(i) (COMPASSIONATE RELEASE)** |

The United States responds in opposition to Defendant Andrew Acosta's "Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)" (hereafter, "Motion"). Defendant's Motion requests this Court to grant him compassionate release based on extraordinary and compelling circumstances (deteriorating health and the heightened risk of serious illness from the COVID-19 virus), and the relevant sentencing factors under 18 U.S.C. § 3553(a). (Motion at 9-20.)

The United States understands, and in many ways shares, Defendant's concerns about COVID-19. However, as detailed in the attached Memorandum of Law, Defendant's Motion should be denied. Defendant states that he has several chronic medical problems, including obesity, Hepatitis C, edema, a degenerative knee joint condition, and chronic pain in both knees with a recent history of surgery on both knees. (Moton at 10-11.) In light of Defendant's obesity, the government does not contest the existence of extraordinary and compelling circumstances allowing compassionate release during the current pandemic.

Despite his statutory eligibility, however, this Court should deny Defendant's motion because he is unable to show that he is no longer a danger to the community, and the § 3553(a) factors weigh against a reduction in Defendant's sentence.

**MEMORANDUM OF LAW**

## I. BACKGROUND

In August 2002, while Defendant was on supervised release from a previous extortion conviction,[1] Defendant robbed a bank in Phoenix, stealing $5,900. (CR 05-01319-PHX-RCC, PSR ¶¶ 5, 44.) Two weeks later, Defendant and a co-defendant robbed the same bank, stealing $12,000. (CR 05-01319-PHX-RCC, PSR ¶ 7.) These bank robberies were the subject of this case, CR 05-01319-PHX-RCC. In December 2002, Defendant and two accomplices robbed another bank, stealing just over $17,000. (CR 03-00075-PHX-GMS, PSR ¶¶ 3-4.) This bank robbery was the subject of Arizona District Court case number CR 03-00075-PHX-GMS.

In this case, Defendant was convicted of one count of bank robbery (Count 1), and one count of bank robbery, aid and abet (Count 2). This Court sentenced Defendant as a career offender to 96 months' imprisonment on Count 1, and ordered that it run consecutive to the sentence imposed in case number CR 03-00075-PHX-GMS, and Count 2. This Court further sentenced Defendant to 210 months' imprisonment on Count 2, and ordered that it run concurrent to the sentence in the case CR 03-00075-PHX-GMS. (CR 127, 129.)[2] In CR 03-00075-PHX-GMS, the court determined that based on Defendant's prior convictions, he was a career offender, and sentenced Defendant to 210 months' imprisonment for the one count of bank robbery. (CR 03-00075-PHX-GMS, CR 176.)

---

[1] In Arizona District Court case number CR 98-00894-PHX-RGS, Defendant was convicted of extortion, an incidental offense of bank robbery, after he and an accomplice robbed a credit union and stole over $5,000. (CR 05-01319-PHX-RCC, PSR ¶ 44.)

[2] Unless otherwise noted, "CR" refers to the Clerk's Record in this case, CR 05-01319-PHX-RCC.

Defendant began serving his sentence on April 13, 2005. He is currently housed at United States Penitentiary ("USP") Lompoc in Lompoc, California, serving the 306-month sentence that was imposed as a result of his bank robberies. Defendant has served approximately two-thirds of sentence. According to the Bureau of Prison's ("BOP") website, Defendant's projected release date is March 30, 2028.

Defendant filed a motion for compassionate release with the Warden at USP Lompoc on June 23, 2020. (Motion, Exh. 1.) The BOP denied Defendant's motion on August 11, 2020, finding that he did not meet the criteria to be considered for compassionate release based on medical circumstance. (Motion, Exh. 2.)

## II. BOP'S RESPONSE TO COVID-19, GENERALLY

BOP has taken aggressive steps to protect inmates' health and to stop the spread of COVID-19 in its facilities. "[M]aintaining safety and security of BOP institutions is [BOP's] highest priority." Updates to BOP COVID-19 Action Plan: Inmate Movement (March 19, 2020), *available at* https://www.bop.gov/resources/news/20200319_covid19_update.jsp. Among other things, BOP has put health screening procedures in place, visits have been restricted, and inmate movement is being reduced to help limit possible exposure in BOP facilities. Individual facilities have adopted "modified operations," including staggered meal and recreation times, to promote social distancing. *See* BOP COVID-19 Action Plan: Agency-Wide Modified Operations (March 13, 2020) ("BOP Action Plan"), *available at* https://www.bop.gov/resources/news/20200313_covid19.jsp.

In addition to the procedures in place to limit transmission of the virus within its facilities, with the FDA's recent emergency authorization of two COVID-19 vaccines, BOP has begun working with the Centers for Disease Control and Prevention ("CDC") to distribute and administer vaccines to staff and inmates. When an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff—who come and go between the facility and the community—present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community. Remaining doses of the vaccine at each location

are then provided to inmates based on priority of need in accordance with CDC Guidelines. https://www.bop.gov/coronavirus/index.jsp (last visited March 22, 2021). As of March 22, 2021, BOP has distributed throughout its facilities 85,488 vaccine doses, and has administered 86,902 vaccine doses.[3] https://www.bop.gov/coronavirus/index.jsp (last visited March 22, 2021). At USP Lompoc, where Defendant is currently housed, 167 staff[4] have been fully inoculated with both doses of the vaccine, and 242 inmates have been fully inoculated. https://www.bop.gov/coronavirus/index.jsp (last visited March 22, 2021).

Finally, BOP is taking dramatic steps to transfer vulnerable inmates to home confinement in appropriate circumstances. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") substantially increased BOP's statutory authority to transfer inmates to home confinement. *See* CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (March 27, 2020) (allowing BOP to "lengthen the maximum amount of time the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2)). The Attorney General directed BOP to exercise its home-confinement authority broadly to protect "the people in [their] custody," taking into consideration prisoners' age, vulnerability to COVID-19, and other factors. *See* Attorney General Memorandum for Director of Bureau of Prisons Re: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020), *available at* https://www.justice.gov/file/1262731/download.

The Attorney General also expanded the cohort of inmates who can be considered for home release, responding to changing conditions at certain institutions. *See* Attorney General Memorandum for Director of Bureau of Prisons Re: Increasing the Use of Home

---

[3] According to BOP's website, the Total Doses Administered will often be greater than the Total Doses Distributed because vials of the Pfizer-BioNTech COVID-19 vaccine officially contain at least five doses but typically contain six doses. Use of this sixth dose, if present, is authorized by the FDA. https://www.bop.gov/coronavirus/index.jsp (last visited March 22, 2021).

[4] BOP staff who have received their vaccination in the community rather than the BOP facility are not reflected in this number. https://www.bop.gov/coronavirus/index.jsp (last visited March 22, 2021).

Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/1266661/download.

Consistent with these directives, BOP is devoting all available resources to assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program and then processing those inmates for transfer as quickly as possible. Between March 26, 2020, and the date of this filing, BOP has placed an additional 23,062 inmates on home confinement. *See* BOP, COVID-19 Coronavirus (updated daily), *available at* https://www.bop.gov/coronavirus/index.jsp (last visited March 22, 2021.)

The facility where Defendant is serving his sentence, USP Lompoc, currently houses approximately 1,148 total inmates (128 inmates at the CAMP N, 204 inmates at the Camp, and 816 inmates at USP). *See* BOP's website pertaining to general information about USP Lompoc *available at* https://www.bop.gov/locations/institutions/lom (last visited March 22, 2021). Thanks to BOP's significant prevention efforts, despite the public outbreak of COVID-19 across the United States over the course of the past several months, currently zero inmates and only one staff have tested positive for COVID-19 at USP Lompoc. *See* BOP, COVID-19 Coronavirus (updated daily), *available at* https://www.bop.gov/coronavirus (last visited March 22, 2021).

## III. ARGUMENT

### A. Legal Framework for Compassionate Release

District courts generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A). The Director of the Bureau of Prisons may make a motion under this section. Following the implementation of the First Step Act in

2019, an inmate may also file a motion, subject to the exhaustion requirement described below.

Compassionate release is both a drastic and permanent remedy; therefore, it is subject to several strict requirements. Defendant bears the burden of proving he meets all elements of eligibility for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing cases); *United States v. Greenhut*, No. 18-CR-48-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (defendant bears the burden of establishing entitlement to sentencing reduction); *see also United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility for sentencing reduction).

**1. Administrative exhaustion is required**

First, a district court can consider a defendant's request for compassionate release only after the defendant makes an administrative request and waits 30 days for a response. Specifically, the statute provides a defendant can file a motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . . " 18 U.S.C. § 3582(c)(1)(A); *see also, e.g., United States v. Weidenhamer*, No. CR 16-01072-PHX-ROS, 2020 WL 1929200, at *2 (D. Ariz. Apr. 21, 2020) ("There is no indication in the statutory text . . . [that] Congress meant to confer on the court the authority to waive exhaustion.") ("*Weidenhamer II*"); *United States v. Tomlinson*, No. CR-18-08374-002-PCT-DWL, 2020 WL 1935522, at *1 (D. Ariz. Apr. 22, 2020) (quoting *Weidenhamer II*).

**2. Extraordinary and compelling reasons are required**

Second, even if the exhaustion requirement is met, a district court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. § 3553(a)]," if the court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[5] The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A), found at United States Sentencing Guidelines (U.S.S.G.) § 1B1.13, which is binding on the court's determination. *See Dillon*, 560 U.S. at 827 (determining that, because § 3582(c) permits a sentencing reduction only where it is "consistent with applicable policy statements issued by the Sentencing Commission," such policy statements are binding on a court determining eligibility); *United States v. Weidenhamer*, No. CR 16-01072-PHX-ROS, 2019 WL 6050264, at *4 (citing cases) ("*Weidenhamer I*"). Sentencing Guidelines § 1B1.13 imposes an additional requirement for compassionate release in that it prohibits this Court from reducing a defendant's sentence unless the court also determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Sentencing Guidelines § 1B1.13 explicitly defines "extraordinary and compelling reasons" that may make a defendant eligible for compassionate release. *See* 28 U.S.C. § 994(t). They include, as relevant here, a serious physical or medical condition, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, n.1(A) (other grounds omitted). The CDC has identified obesity as a medical condition that places people of any age at an increased risk of severe illness from COVID-19. In light of Defendant's medical condition (obesity)—a condition from which he is unlikely to recover in the coming months—and the continuing COVID-19 pandemic

---

[5] Alternatively to the "extraordinary and compelling reasons" requirement, § 3582(c)(1)(A)(ii) also allows for compassionate release where "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community . . . ." Based on Defendant's age (50 years old) and how long he has served in prison (over 15 years), this subsection is inapplicable to Defendant's Motion.

in this country, it is the position of the United States that Defendant has demonstrated an "extraordinary and compelling reason" making him eligible for compassionate release.

Congress has tasked the Sentencing Commission, not the courts, with determining what constitutes an "extraordinary and compelling reason" that can justify compassionate release. That directive is expressed in several statutes. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section [] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, section 994(t) specifies:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). And finally, as stated, § 3582(c)(1)(A) conditions sentencing reductions on a court's fidelity to the applicable policy statement, which appears at U.S.S.G. § 1B1.13. This policy statement is binding under the express terms of § 3582(c)(1)(A). Thus, any suggestion that Congress aimed to afford courts discretion to determine in individual cases whether there is a basis for a sentence reduction, ignores the text of the actual statutes, as well as the Supreme Court's decision in *Dillon*.[6]

Furthermore, the Supreme Court in *Dillon* makes clear that the statutory requirement in § 3582 that a court heed the restrictions stated by the Sentencing Commission is binding. 560 U.S. at 827. *Dillon* concerned a motion for a reduction in

---

[6] The Second, Fourth, Sixth, and Seventh Circuits have held that U.S.S.G. § 1B1.13 is not binding as to compassionate release motions filed by defendants. *See United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020). The government disagrees with the holdings in those opinions, which are not binding on this Court. The applicability of § 1B1.13 to defendant-filed compassionate release motions remains an open question in this circuit. *See United States v. Markillie*, 834 F. App'x 395, 396 (9th Cir. 2021).

sentence under 18 U.S.C. § 3582(c)(2), which allows a sentence reduction in limited circumstances upon the Commission's adoption of a retroactive guideline amendment lowering a guideline range. That subsection allows such an action "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"—language identical to that which appears in § 3582(c)(1)(A) with respect to a court's consideration of a motion for compassionate release ("if it finds . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").

Thus, any suggestion that Congress aimed to afford courts discretion to determine in individual cases whether there is a basis for a sentence reduction, ignores the text of the actual statutes, as well as the Supreme Court's decision in *Dillon*.

### 3. Relief is rare and within this Court's discretion to deny

Third, even for defendants who are statutorily eligible, compassionate release is a rare and extraordinary remedy, within a district court's discretion to deny. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding district court did not abuse its discretion by denying compassionate release despite defendant's eligibility for that relief); *United States v. Mangarella*, No. 06-CR-151, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) (citation omitted); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("most courts treat compassionate release 'due to medical conditions [a]s ... a rare event.'"). This reluctance to expansively apply compassionate release is grounded in a concern that any less-narrow application would yield significant sentencing disparities. *See United States v. Ebbers*, 432 F. Supp. 3d. 421, 430 (S.D.N.Y. Jan. 8, 2020).

## B. Defendant Has Exhausted His Administrative Remedies

On June 23, 2020, Defendant filed a motion for compassionate release with the Warden at USP Lompoc. (Motion, Exh. 1.) The BOP denied Defendant's motion on August 11, 2020, finding that he did not meet the criteria to be considered for compassionate release based on medical circumstance. (Motion, Exh. 2.) Accordingly, Defendant has exhausted his administrative remedies.

### C. Defendant's Request for Compassionate Relief Should Be Denied on Substantive Grounds.

Defendant has met the administrative exhaustion requirement of § 3582(c)(1)(A) and therefore his motion is not procedurally barred. This Court should deny Defendant's Motion on the merits, however, because he has not established that he is no longer a danger to the public, and the § 3553 factors weigh against his release.

#### 1. The government does not contest that Defendant's medical conditions constitute extraordinary and compelling reasons.

Most of the COVID-related compassionate release motions to date have been brought by defendants concerned about possible exposure to COVID-19 in prison. Courts have found that such generalized, speculative concerns about possible exposure to COVID-19 are not extraordinary and compelling grounds justifying compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Eberhart*, No. 13-CR-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .").

However, in light of the increased risk of serious illness from COVID-19, Defendant's obesity presents an extraordinary and compelling reason allowing for compassionate release during the current pandemic.

#### 2. Although eligible for compassionate release based on his health, Defendant's request should be denied because Defendant remains a danger to the community, and the sentencing factors under 18 U.S.C. § 3553(a) weigh against his release.

Despite Defendant's medical conditions and the risks of COVID-19, this Court should deny Defendant's request for compassionate release because Defendant remains a danger to the community. In addition, the sentencing factors under 18 U.S.C. § 3553 weigh against his release.

As discussed above, this Court may not reduce a defendant's sentence under § 3582(c)(1)(A) unless it finds that "the defendant is not a danger to the safety of any other

person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13; *see United States v. Brewer*, No. CR-12-01927-PHX-DJH, 2020 WL 7047660, at *3-4 (D. Ariz. Dec. 1, 2020) (denying compassionate release despite Defendant's serious and multiple health conditions satisfying the extraordinary and compelling reasons for release because Defendant remained a danger to the public and the § 3553 sentencing factors militated against his release); *United States v. Gotti*, No. 02-CR-743, 2020 WL 497987, at *6 (S.D.N.Y. Jan. 15, 2020) (release was inappropriate regardless of extraordinary and compelling circumstances because defendant posed a continuing danger to the public); *accord United States v. Applewhite*, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-old inmate based on danger); *United States v. Urso*, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019).

Defendant acknowledges that his offense conduct 18 years ago was serious, but contends that he is entitled to compassionate release because no weapons were used in the robberies, no one was injured, he has served the majority of his aggregate prison term, and he has shown an extraordinary level of rehabilitation. (Motion at 17-18.) Defendant further states that upon his release, he will reside with his future employer, who owns and operates his own business, and will have financial support from a long-time friend. (Motion at 20, Exh. 11.)

The record here precludes a finding that Defendant is no longer a danger to the safety of any other person or to the community as required in Sentencing Guidelines Policy Statement § 1B1.13(2). First, the nature and circumstances of Defendant's offense were serious. While on supervised release for a previous robbery of a credit union, Defendant committed three more bank robberies. Defendant asserts that no one was injured, but one of the bank tellers who was a victim in two of the robberies provided a victim impact statement in which she indicated that she was greatly impacted by the robberies and had to quit her job at the bank because she was afraid to help customers for fear of being robbed again. (CR 05-01319-PHX-RCC, PSR ¶ 10.) The victim bank teller further indicated she

feared Defendant may seek retribution against her or her family as she testified against him at trial. (CR 05-01319-PHX-RCC, PSR ¶ 10.) Second, the history and characteristics of Defendant reveals a criminal history that began when he was a juvenile. This history includes convictions for carrying a concealed weapon, theft, conspiracy to sell narcotic drugs, extortion (an incidental offense of bank robbery), and other criminal conduct involving theft and burglary. (CR 05-01319-PHX-RCC, PSR ¶¶ 41-44, 49-51.) Although Defendant has alleged positive things he has completed while in prison, he has also had disciplinary infractions years into his sentence, the most recent being an assault in 2016. (Motion, Exh. 9.) Furthermore, rehabilitation alone is not an extraordinary and compelling reason to justify compassionate release. *See* 28 U.S.C. § 994(t).

Because of the nature and characteristics of Defendant's offense, his criminal history, and his disciplinary infractions, Defendant has failed to meet his burden of showing that he is no longer a danger to the community such that compassionate release is appropriate.

**3. The § 3553 factors weigh against release.**

Similarly, the § 3553(a) factors disfavor a sentence reduction. Defendant's offense was a serious, potentially violent crime, requiring significant deterrence both generally and specifically. In addition to the violent nature of the offenses, Defendant also had a Criminal History Category V, which included carrying a concealed weapon, theft, conspiracy to sell narcotic drugs, and extortion (an incidental offense to bank robbery). (CR 05-01319-PHX-RCC, PSR ¶¶ 41-44.)

Defendant states that in both robbery cases, he was sentenced as a career offender based, in part, on his 1999 extortion conviction. Defendant contends that conviction is arguably not a crime of violence. (Motion at 18.) He further argues that the other prior conviction supporting his career offender designation was a violation of Arizona Revised Statutes ("A.R.S.") § 13-3908(A)(2), which is not categorically a drug trafficking offense because it is broader than the federal analogue and is indivisible. (Motion at 18.) Defendant states that the Ninth Circuit Court of Appeals recently granted him a certificate of

appealability on that issue, and it is currently being litigated in that court, C.A. No. 19-15254. (Motion at 19.)

Whether Defendant was properly sentenced as a career offender is not an appropriate issue to be raising in a motion for compassionate release. "Compassionate release is a mechanism for inmates to seek a sentence reduction for compelling reasons, not for remedying potential errors in a conviction." *United States v. Musgraves*, No. 20-2702, 2021 WL 945092, at *2 (7th Cir. March 12, 2021); *see United States v. Moreira*, No. 06-20021-01-KHV, 2020 WL 693976, at * 6 (D. Kan. Sept. 3, 2020) ("Nothing in the First Step Act suggests that Congress authorized courts to grant relief under the compassionate release provision of § 3582(c)(1)(A) based on a request that the court reconsider whether the sentence is too long."). "[T]he correct vehicle to challenge a conviction or sentence is 28 U.S.C. § 2255 or, in rare circumstances, 28 U.S.C. § 2241." *Musgraves*, 2021 WL 945092, at *2 ("[W]hether [the defendant] committed a qualifying 'controlled substance offense' goes to the validity of the sentence, which is a hallmark use of § 2255(a)."); *see United States v. Wood*, No. 1:17-CR-118-LG-JCG-2, 2020 WL 4318758, at *1 (S.D. Miss. July 27, 2020) (denying defendant's motion for reconsideration for compassionate release in part because defendant's argument that the court improperly applied a sentencing enhancement was not cognizable on a § 3582 motion; "'§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity'" (quoting *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019)).

Even if Defendant could raise this type of claim in relation to the § 3553 sentencing factors, he still would not be entitled to relief. Sentencing Guidelines § 1B1.13 sets forth circumstances under which "extraordinary and compelling" reasons exist to reduce a sentence, which include a defendant's terminal or debilitated medical condition, age (at least 65) combined with other criteria, or death or incapacitation of the family member caregiver. Application Note 1(D) also allows for one other category of extraordinary and compelling reasons, defined as:

> (D) Other Reasons—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, App. n.1(D). Addressing this subsection, the BOP has issued a regulation defining its own consideration of requests for compassionate release. That regulation, which was amended effective January 17, 2019 following passage of the First Step Act, appears at Program Statement 5050.50. *See* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited March 22, 2021). According to the Program Statement, the BOP looks to the same criteria as the Sentencing Commission: medical condition, age, and family circumstances. Neither the policy statement nor the BOP regulation provides any basis for compassionate release due to a reevaluation of the severity of the original sentence or a subsequent change in the law.

Even if this Court could consider a change in the law affecting Defendant's sentence, Defendant is unable to establish that he is not a career offender, as some of these issue are still pending in other courts. Contrary to Defendant's assertion, the Ninth Circuit did not grant a certificate of appealability as to the merits of Defendant's § 2255 motion which challenges his career offender designation based on his prior conviction under A.R.S. § 13-3408. Rather, Defendant's § 2255 motion was denied as untimely, and the Ninth Circuit granted a certificate of appealability only to the issue of whether his § 2255 motion was timely filed. (Exh. A, Arizona District Court No. CV-17-00765-PHX-RCC, CR 24; Exh. B, Ninth Circuit Court of Appeals No. 19-16254, Doc. 4.) Defendant also states that in denying his § 2255 motion, the court made the determination that a violation of A.R.S. § 13-3408(A)(2) was not categorically a "drug trafficking offense" because it was broader than its federal analogue and was indivisible. (CV 17-00765-PHX-RCC, CR 24.) Not only was this statement dicta, in that Defendant's motion was denied on timeliness grounds, it is not settled law. Recently, the Arizona Supreme Court heard oral argument on a certified question from the Ninth Circuit Court of Appeals concerning whether Arizona's drug possession statute, A.R.S. § 13-3408 was divisible as to drug type.

*See Romero-Millan v. Wilkinson*, Arizona Supreme Court No. CV-20-0128-CQ. Accordingly, whether Defendant was improperly sentenced as a career offender is not a factor this court should consider when analyzing the § 3553 factors in this case, and the other § 3553 factors this Court should consider weigh against Defendant's release.

## IV. CONCLUSION

For all of the foregoing reasons, Defendant's Motion should be denied.

Respectfully submitted this 22nd day of March, 2021.

PAUL ANTHONY MARTIN
Acting United States Attorney
District of Arizona

*s/ Karla Hotis Delord*
KARLA HOTIS DELORD
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing, thereby transmitting of a Notice of Electronic Filing to the all CM/ECF registrants.

I further certify that the following participant in this case is not a registered CM/ECF user. I have mailed the foregoing document by regular First-Class Mail, postage prepaid, for delivery, to the following non-CM/ECF participant:

Andrew Acosta, #44014-008
LOMPOC-CA-LOMPOC-USP
U.S. Penitentiary
3901 Klein Blvd.
Lompoc, CA 93436

*s/ Tammie R. Holm*
Paralegal Specialist
U. S. Attorney's Office