**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-05-01319-001-PHX-RCC |
| Plaintiff, | No. CR-03-00075-PHX-RCC |
| v. | **ORDER** |
| Andrew Acosta, | |
| Defendant. | |

Before the Court is Defendant Andrew Acosta's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release).[1] (Doc. 187 in Case No. CR-05-01319-001-PHX-RCC; Doc. 277 in Case No. CR-3-00075-PHX-RCC.)[2] The Court will deny the motion.

## I.   Factual Summary

### a.   Underlying Convictions

In 1998, Acosta and an accomplice entered an Arizona Central Credit Union and robbed a teller of $5,485. (June 11, 2008 Presentence Report ("'08 PSR") at ¶44.) Acosta pled guilty to one count of Extortion, an Incidental Offense of Bank Robbery. (Docs. 36, 53–54 in Case No. 2:98-cr-000894-RGS-2.) At sentencing, the District Court judge

---

[1] Prior to the instant motion, Acosta filed three similar pro se motions for compassionate release. (Docs. 172, 174 in CR-05-01319-RCC-1; Doc. 265 in CR-03-00075-PHX-RCC.) Because "[a]n amended motion supersedes an original motion" and "after amendment, the Court [treats] an original motion as nonexistent," the Court will deny the pro se motions as moot. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

[2] Unless otherwise noted, citations refer to the ECF-generated document and page numbers in Case No. CR-05-01319-001-PHX-RCC.

granted a downward departure and sentenced Acosta to forty-two months' incarceration. (*Id.*) Acosta was released from custody on February 5, 2002 and placed on supervised release. ('08 PSR at ¶44.) Within a year, a warrant for his arrest issued because he had failed to successfully complete residential drug treatment. *Id.*

Prior to arrest, on August 16, 2002, Acosta robbed a Bank of America, making off with $5,900.00. (*Id.* at ¶ 5.) On August 28, 2002, twelve days after the first Bank of America robbery, Acosta and an accomplice returned to the same bank and robbed $12,004 from the same teller. (*Id.* at ¶ 7.)

Acosta was arrested on the warrant in the 1998 case on September 12, 2002, but on October 29, 2002, his supervised release was reinstated, and he was again released to a treatment center. (*Id.* at ¶ 44.) Acosta left this program without permission, and a warrant again issued for his arrest. (*Id.*) However, on December 26, 2002, Acosta and three accomplices robbed another Bank of America branch, retrieving $17,035.00. (April 12, 2005 Presentence Report ("'05 PSR") at 4 in CR-03-00075-001-PHX-RCC.)

Acosta was arrested on the second warrant on January 3, 2003. ('08 PSR ¶ 44.) His supervised release was again revoked, and the court sentenced him to 8.5 months in prison. (*Id.*) On September 4, 2003, a jury found Acosta guilty of the December 26, 2002 bank robbery. (Doc. 102 in Case No. CR-03-00075-PHX-RCC). On January 11, 2008, a separate jury found Acosta guilty of the August 16 and August 28, 2002 robberies. (Doc. 99.)

District Judge Earl H. Carrol sentenced Acosta for the December 2002 robbery conviction to 210 months of incarceration. (Doc. 176 in CR-03-000-75.) District Judge Mary H. Murguia subsequently sentenced Acosta for the two August 2002 robberies. (Doc. 129.) She determined that Acosta was a career offender, which increased his total offense level from 25 to 32, and his criminal history category from IV to VI. ('08 PSR at p. 19–20.) For Count One: Bank Robbery, the judge sentenced Acosta to 96 months' incarceration, to run consecutive to both the 210 months in the December 2002 conviction and Count 2. (*Id.*; Doc. 163) For Count Two: Bank Robbery, Aiding and Abetting, the judge sentenced Acosta to another 210 months' incarceration, to run concurrent to the

1    December 2002 sentence. (*Id.*) This sentence was affirmed on appeal. (Doc. 159-1.)

2        Thus far, Acosta has served over two-thirds of his sentence. Acosta's projected

3    release date is March 30, 2028. (Doc. 286 at 3.)

4        **b.  § 2255 Habeas Order**

5

6        Acosta has unsuccessfully attempted to challenge his career offender status at

7    sentencing and throughout the appeals process. (*See* Doc. 159-1, 171; Doc. 114 at 3.) This

8    Court denied his most recent § 2255 petition, stating:

9

10           Since A.R.S. § 13-3408 is indivisible, after *Descamps*[3] the Ninth
             Circuit could not have found as it did; that Acosta's prior conviction
11           qualified for the career offender enhancement based on the sentencing
             colloquy and the record of conviction.

12

13   (Doc. 171 at 7.) However, because the cases Acosta cited did not "create a newly

14   established right that tolls[ed] the statute of limitations for filing his § 2255 Motion," the

15   Court found his Motion was untimely and denied relief. (*Id.* at 6.)

16       **c.  *Acosta's Compassionate Release Motion***

17

18       Acosta now believes he is a good candidate for early release because of the existence

19   of Covid-19 in his holding facility, his underlying health risks, his rehabilitation while

20   incarcerated, and the fact he poses no danger to the community. (Doc. 187 at 16.) He is

21   currently housed at USP-Lompoc, which he alleges has had three inmate deaths and 25

22   Coronavirus infections. (Doc. 187 at 12.) Acosta is 50 years old, overweight, and suffers

23   from Hepatitis C, edema, knee problems, and may have carpal tunnel syndrome. (Doc. 187

24   at 11.)  While incarcerated, Acosta has completed several college-level courses, received

25   three associate's degrees, and obtained two apprenticeships. (Doc. 187 at 16–17.)

26   Furthermore, he is "certified as a facilitator by the Alternatives to Violence Project," and

27   "teaches other inmates non-violent conflict resolution methods." (*Id.* at 17.)

28

---

[3] *Descamps v. United States*, 570 U.S. 254 (2013).

1    Acosta also argues the § 3553(a) factors weigh in favor of his release. (*Id.* at 18.)
2    He notes one prior conviction was for an offense committed when he was eighteen. (*Id.*)
3    This involved no weapons or violence, nor did his subsequent bank robberies. (*Id.*) Finally,
4    Acosta claims he was sentenced as a career offender based on two underlying convictions
5    that no longer qualify for enhancement. For the first conviction, Extortion in violation of
6    28 U.S.C. § 2113(a), Acosta alleges it "arguably . . . is not categorically a 'crime of
7    violence' for [U.S.S.G.] § 4B1.1 purposes." (Doc. 187 at 18.) For the second, Conspiracy
8    to Sell Narcotic Drugs in violation of Arizona Revised Statues § 13-3408(A)(2), Acosta
9    indicates even this Court recognized in its denial of Acosta's § 2255 motion that the offense
10   "is not categorically a 'drug trafficking offense,' as it is broader than its federal analogue,
11   and is indivisible." (Doc. 187 at 18–19.) He states the ability to use these previous sentences
12   for career offender status is currently an issue on appeal in the Ninth Circuit. *See United
13   States v. Acosta*, No. 19-16254 (9th Cir. June 24, 2019).

14              *d.   Government's Response*
15

16   The Government concedes that Acosta's obesity qualifies as an extraordinary and
17   compelling circumstance permitting release under 18 U.S.C. § 3582(c)(1)(A). (Doc. 198 at
18   1.) However, it argues that Acosta should not receive early release because he poses a
19   danger to society and the § 3553(a) factors weigh against release. (*Id.* at 2.) Moreover, the
20   Bureau of Prisons ("BOP") at USP-Lompoc has effectively handled Covid-19 in its
21   facility–the Government reports no inmates and only one staff member has tested positive
22   for Covid-19 at the time of filing. (*Id.* at 5.)

23   **II.    Standard of Review**
24

25   Acosta's motion is brought under the compassionate release statute, 18 U.S.C. §
26   3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat.
27   5194. The statute allows a court to modify a term of imprisonment upon a motion from the
28   defendant when: (1) the defendant has exhausted his administrative remedies; (2) the court

has considered the section 3553(a) factors; and (3) the court finds that (i) "extraordinary and compelling reasons warrant such a reduction," or that (ii) the defendant is 70 or over, has been imprisoned at least 30 years, and has been found not to present a danger to the community. 18 U.S.C. § 3582(c)(1)(A). The reduction must also be "consistent with [the Sentencing Commission's] applicable policy statements." *Id.*

## III.    Administrative Remedies

The Government concedes that Acosta has exhausted his administrative remedies, (Doc. 198 at 3.) The Court agrees.

## IV.    Extraordinary and Compelling Reasons for Release

Reducing a sentence under the compassionate release statute is reserved for "compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." *See* 28 C.F.R. § 571.60 (2000). The U.S. Sentencing Guidelines' Application Note § 1B1.13 explains that "extraordinary and compelling" reasons may exist due to:

> (A) the medical condition of the defendant; (B) the age of the defendant; (C) family circumstances, including "death or incapacitation of the caregiver of the defendant's minor child"; and (D) other reasons, as determined by the Director of the Bureau of Prisons, that amount to an extraordinary and compelling reason "other than, or in combination with, the reasons described in subdivisions (A) through (C)."

*United States v. Foster*, 492 F. Supp. 3d 1117 (D. Or. 2020) (quoting U.S.S.G. §1B1.13 app. n.1(A)–(D)). Although the guidelines in Application Note § 1B1.13 are not compulsory, they may offer a persuasive means for finding an inmate's circumstances extraordinary and compelling. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."). Nevertheless, it is rare to receive a sentence reduction because of a medical

issue. *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *2 (D. Ariz. June 27, 2019). Additionally, the existence of the Coronavirus and its potential to infect inmates at a particular prison is not enough, alone, to reduce a sentence under the compassionate release statutes. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Government concedes Acosta's obesity presents an extraordinary and compelling reason for early release. (Doc. 198 at 2, 8.) According to the Center for Disease Control, obesity may increase a person's risk for developing severe complications from Covid-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited April 28, 2021) (indicating significant evidence that obesity increases risk of severe complications). The Court agrees that Acosta's circumstances are extraordinary and compelling and moves directly to the §3553(a) factors.

## I.   § 3553(a) Factors

Even if an inmate has presented a compelling and extraordinary case for early release, the Court must also weigh the § 3553(a) factors to determine whether release is warranted. *See* 18 U.S.C. § 3582(c)(1)(A). The § 3553(a) "factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).

### a.   *Relevant Policy Statements*

The Government first argues that part of the compassionate release statute requires any sentence reduction be "consistent with the applicable policy statement issued by the Sentencing Commission." (Doc. 198 at 7.) To comply, the Government originally stated

that under United States Sentencing Guideline § 1B1.13, Acosta must show he is not a danger to the safety of the community. (Doc. 198 at 7.) However, since briefing, the Ninth Circuit has released its opinion in *United States v. Aruda*, noting that because U.S.S.G. §1B1.13 has not been updated since the promulgation of § 3582(c)(1)(A), and only addresses sentencing reductions directed by BOP, not the courts, "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and so, District Courts are not limited by the requirements listed in § 1B1.13. *Aruda*, 993 F.3d at 801 (quoting *United States v. McCoy*, 981 F.3d 271, 281–84 (4th Cir. 2020)). While the dangerousness evaluation may be relevant, it is not a prerequisite to release. *Id.* So, the Court reviews potential dangerousness as part of its larger evaluation of "the nature and the circumstances of the offense and the history and characteristics of the defendant," and not as a mandated policy requirement.

### b. Nature and Circumstances of Offense and Defendant's History

While Acosta has shown rehabilitation while incarcerated, this does not negate his long criminal history. In addition, rehabilitation alone is insufficient. 28 U.S.C. § 994(t). Acosta contends that the first of four bank robberies occurred when he was merely eighteen. However, this was not the beginning of his criminal career. As the PSR noted, "The defendant has an extensive criminal history, dating back to 1985, when he was a juvenile. Since that time, he has continued to blatantly ignore the laws of our society and has repeatedly become involved in bank robbery offenses." ('08 PSR at p. 19.) Acosta's criminal history encompasses not simply bank robbery, but burglary, drugs, theft, and concealed weapons violations. (*See e.g.*, *id.* ¶¶ 41–45.) He also conceded he was affiliated with a gang. (*Id.* ¶ 45.) Moreover, he repeatedly violated the terms of his supervised release and committed the instant offenses while under supervision. These circumstances weigh against early release and, in the very least, demonstrate that Acosta has not shown that outside of an institutional setting, he is willing or able to follow the Court's orders.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.  Sentencing Considerations

Much of Acosta's argument relies upon his assertion that he should not have been subject to the career offender enhancement. And while the Court has recognized that if sentenced today, one conviction may not qualify as an underlying offense, this does not create a sentencing disparity with others who were sentenced at the same time as Acosta. The argument also fails to recognize certain considerations at sentencing and the fact that Acosta committed three offenses on different dates, which could have been construed as separate offenses subject to consecutive sentencing.

For instance, the PSR's sentence recommendation considered Acosta's criminal history and the effect of the career offender enhancement. It stated:

> Acosta is before the Court as a result of his continued involvement in violent criminal activity. . . . Despite being sentenced to state and federal prison for his prior convictions, it appears Acosta has done little to change his behavior as evidenced by his involvement in the instant offenses while on supervised release for a prior bank robbery conviction. . . .

> Based on the above, **a sentence at the high end of the guideline range was considered.** . . . Though the adjustments for career offender are warranted and appropriately applied, they result in a significant increase to the guideline imprisonment range. **It is believed these increases are adequate to address the defendant's behavior and a sentence at the low end of the guideline range is therefore recommended.**

('08 PSR at p. 19–20 (emphasis added).) The PSR observed that if the Court granted Acosta's objections to the sentencing recommendations, he would likely have been subject to the high end of the 100 to 125-month imprisonment range. (*Id.* at p. 25.) Acosta received the lowest sentence within the career offender guidelines range. This sentence considered Acosta's criminal history and the considerable increase in range for career offender. The Court finds this factor weighs against release.

### d.  Victim Restitution

Acosta acknowledges the harm he has inflicted upon the victims in this case, but

- 8 -

states he feels he has made amends for his errors. (Doc. 187 at 18.) Despite his remorse, Acosta terrorized a bank teller on two separate occasions. The PSR details the fear and difficulties bank employees suffered because of Acosta's choices. ('08 PSR at §§ 9–11.)

In sum, despite providing extraordinary and compelling circumstances, the § 3553(a) factors weigh against release, so the Court will deny the motion.

Accordingly, IT IS ORDERED:

1) Andrew Acosta's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) is DENIED. (Doc. 187 in CR-05-01319-RCC; Doc. 277 in CR-03-00075-RCC.)

2) Andrew Acosta's pro se Motions to Reduce Sentence are DENIED AS MOOT. (Docs. 172 and 174 in CR-05-01319-RCC; Doc. 277 in CR-03-00075-RCC.)

Dated this 5th day of May, 2021.

Honorable Raner C. Collins
Senior United States District Judge